Jeffrey D. Kaliel (CA Bar No. 238293)
*jkaliel@kalielpllc.com*
Sophia Goren Gold (CA Bar No. 307971)
*sgold@kalielgold.com*
**KALIEL GOLD PLLC**
1100 15th Street., NW, 4th Floor
Washington, D.C.  20005
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATASHA SCOTT, on behalf of herself and all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PANDA RESTAURANT GROUP, INC., and DOES 1- 50, inclusive,<br><br><br>　　　　Defendant. | Case No.<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Case 2:21-cv-05368-MCS-GJS   Document 1   Filed 07/01/21   Page 2 of 17   Page ID #:2

Plaintiff NATASHA SCOTT, on behalf of herself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff and through her attorneys as follows:

## NATURE OF ACTION

1.      This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Panda Restaurant Group, Inc. ("Defendant" or "Panda Express"), arising from its deceptive and untruthful promises to provide a flat $2.95 delivery fee on food deliveries ordered through is App and website.

2.      Since the beginning of the COVID-19 pandemic, Panda Express has moved aggressively into the food delivery business, exploiting an opportunity presented by Americans' reduced willingness to leave their homes.  To appeal to consumers in a crowded food delivery marketplace, Panda Express has promised its customers low-price delivery in its mobile application and on its website, usually in the amount of $2.95.

3.      These representations, however, are false, because that is not the true cost of having food delivered by Panda Express.  In fact, Panda Express imposes hidden delivery charges on its customers in addition to the low "delivery charge" represented in its app and on its website.

4.      On delivery orders only, Panda Express assesses an additional charge on food orders that it calls a "service charge."  This additional charge amounts to 10% more for the same food received by non-delivery customers. Because this fee is exclusively charged to delivery customers, and not to customers who order in-store or who order online and pick up their food in store, the "service fee" is by definition a delivery fee.  Panda Express obscures the true nature of the fee by naming it a "service fee."

5.      Even more insidiously, Panda Express hides its "service fee" in a deceptive line item called "Taxes and Fees"—further obscuring its hidden delivery charge from consumers during the ordering process.

6.      This hidden delivery upcharge makes Panda Express's promise of low-cost, $2.95 delivery patently false.  The true delivery costs are obscured, as described above, and far exceed its express representation that its delivery fee is $2.95.

///

2
CLASS ACTION COMPLAINT

7.      By falsely marketing a quantified, low-cost delivery charge, Panda Express deceives consumers into making online food purchases they otherwise would not make.

8.      Panda Express misrepresents the nature of the delivery charges assessed on the Panda Express mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of its low-cost delivery promises, and that misrepresent the actual costs of the delivery service.

9.       Specifically, Panda Express omits and conceals material facts about the Panda Express delivery service, never once informing consumers in any disclosure, at any time, that the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

10.     Hundreds of thousands of Panda Express customers like Plaintiff have been assessed hidden delivery charges they did not bargain for.

11.     Consumers like Plaintiff reasonably understand Panda Express' express "Delivery Fee" representation to disclose the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online and picking up food in person or ordering and picking up food in person.

12.     By unfairly obscuring its true delivery costs, Panda Express deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Panda Express competitors Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Panda Express, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

13.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows consumers to decide whether they will pay Panda Express's delivery mark-ups.

**PARTIES**

14.     Plaintiff Natasha Scott is a citizen of the State of Michigan who resides in Wyandotte, Michigan.

15.     Defendant, Panda Restaurant Group, Inc., is incorporated in California and maintains its principal business offices in Rosemead, California.

///

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2) and (6). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and at least some members of the proposed Classes have a different citizenship from Defendant.

17.     The Central District of California has personal jurisdiction over Defendant because Defendant is a corporation authorized to conduct, and does conduct, business in the State of California, including by maintaining its corporate headquarters within this District. Defendant is registered to do business in California and intentionally avails itself of the California market through the ownership and operation of numerous store locations throughout California, including within this District, which has caused both obligations and liability of Defendant to arise in this District.

18.     Venue is proper under 18 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## COMMON FACTUAL ALLEGATIONS

### A.  Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic

19.     In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

20.     US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

21.     The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

---

4

user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

22.     Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

23.     According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

24.     The arrival of the unprecedented COVID-19 pandemic escalated the value of online food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

25.     In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during

---

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

26.     The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

27.     The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

28.     In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.  Panda Express's App and Website Fails to Bind Users to Any Terms of Service**

---

[8] *See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.

[9] *Id.*

[10] *See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.

[11] *See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

29.     When a consumer downloads the Panda Express app, or uses the Panda Express website, she may create an account in order to place an order for delivery or pickup.

30.     In order to do so, a user enters in a name and contact information.

**C. Panda Express Prominently and Plainly Represents a Flat $2.95 "Delivery Fee" on its App and Website**

31.     Beginning in early 2020, Panda Express began prominently featuring low-cost delivery promises on its mobile application and on its website.

32.     Such representations often are made on the home screen of the app or website, and were always made on the check out screen of the app and website, prior to the finalization of an order.  On that screen, Panda Express promised a flat "Delivery Fee," usually in the amount of $2.95.

33.     Specifically, for supposed "$2.95 Delivery Fee" orders, the order finalization screen states:

Subtotal: [representing the cost of the food selected]

Delivery Fee:  $2.95

Tip: [a prepopulated amount, suggested by the app or website]

Taxes & Fees: [representing sales taxes and additional fees]

ORDER TOTAL: [adding up the above]

34.     In short, there was no way for Plaintiff or other users of the Panda Express mobile application or website to *avoid* seeing Panda Express's promises of a flat fee, $2.95 delivery charge.

**D. Panda Express Omits and Conceals Material Facts About the Costs of the Panda Express Delivery Service**

35.     But those disclosures were false and misleading, and the delivery charge was not, in fact, $2.95.

36.     That is because Panda Express applies a "Service Fee" exclusively to delivery orders, hides that "Service Fee" from users behind a hyperlink, and misrepresents what the "Service Fee" is actually for:  a hidden delivery charge.

37.     On ordering screen, and for the first time in the ordering process, Panda Express presents a line item called "Taxes and Fees."   The ordering screen does not explain what "Taxes and Fees" are

comprised of.

38.     Only if a user clicks on "Taxes and Fees" do two further line items appear: "Tax" and "Service Fee." "Tax" adds the locally applicable sales tax rate. "Service Fee" adds a further charge of 10% of the total food cost.  This "Service Fee" is exclusively applied by Panda Express to delivery orders and is therefore by definition an additional hidden delivery charge.

39.     In fact, Panda Express does not apply this "Service Fee" to orders made on its app and website when those orders are for in-store pickup.

40.     In short, the disclosed "Delivery Fee" is not actually $2.95.  The *actual* "delivery fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden "Service Charge" markup applied exclusively to delivery orders.

41.     If that were not enough, Panda Express misrepresents the true nature of the "Service Fee."

42.     If a user clicks a further link next to "Service Fee," a disclosure appears stating that the fee "Helps maintain and improve your digital experience."

43.     This disclaimer is false.  The "Service Fee" is not for "digital experience," it is a hidden delivery fee. This is necessarily true because the "Service Fee" is only assessed on delivery orders.  It is not assessed on orders placed through the mobile app or website that are for pickup—even though the same so-called "digital experience" is used by a consumer for such an order.

44.     Panda Express does not inform consumers the true costs of its delivery service and it misrepresents its Delivery Fee as $2.95, when in fact those costs are actually much higher.

**E.  Other Restaurant Industry Actors and Panda Express Competitors Disclose Delivery Fees Fairly and Expressly**

45.     By unfairly obscuring its true delivery costs, Panda Express deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, Panda Express competitors Del Taco and El Pollo Loco both offer delivery services through their app and website.  But unlike Panda Express, Del Taco and El Pollo Loco fairly and prominently represent their true delivery charges.

46.     For example, Del Taco does not mark-up food charges for delivery orders through its app,

nor does it add an additional "service charge" to delivery orders.  Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

47.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

48.    Similarly, Panda Express competitor El Pollo Loco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders.  Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

49.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

**F. Plaintiff's Experience**

50.    Plaintiff used the Panda Express website to make a purchase of food on May 1, 2021, in the total amount of $36.94.

51.    Prior to placing her order, the Panda Express website stated that the Delivery Fee was $2.95.

52.    However, Plaintiff's purchase included a hidden "Service Fee" that in fact represented an additional delivery fee. Panda Express charged Plaintiff a $2.90 service fee on her order.

53.    Upon information and belief, this same service fee is assessed only on delivery orders like the one made by Plaintiff and would not have been assessed to Plaintiff had she picked up her order in person from the Panda Express location.

54.     Plaintiff would not have made the purchase if she had known the Panda Express delivery fee was not in fact $2.95.

55.     If she had known the true delivery fee, she would have chosen another method for receiving food from Panda Express or ordered food from another provider.

## CLASS ALLEGATIONS

56.     Plaintiff brings this action on behalf of herself and a Class of similarly situated persons defined as follows:

> All consumers outside of California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the Panda Express mobile app or website, and were assessed higher delivery charges than represented.

57.     Excluded from the Class are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

58.     **Numerosity**:  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

59.     **Commonality**:  There are questions of law or fact common to the Class, which include, but are not limited to the following:

      a.     Whether during the class period, Defendant deceptively represented Delivery Fees on food deliveries ordered through the Panda Express website and mobile app;

      b.     Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c.      Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.      Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e.      Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

f.      Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

g.      Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount of the delivery fee on food deliveries ordered through the Panda Express website and mobile app.

60.     **Typicality**:  Like Plaintiff, many other consumers ordered food for delivery from Panda Express's website or mobile app, believing delivery to be the flat fee represented based on Defendant's representations. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

61.     **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

62.     **The Proposed Class and Satisfies the Rule 23(b)(2) Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Panda Express's website and mobile app; there is no way for her to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

63.   Specifically, Defendant should be ordered to cease from representing their delivery service as a flat fee and to disclose the true nature of their mark-ups.

64.   Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

65.   **The Proposed Class Satisfies the Rule 23(b)(3) Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## <u>CAUSES OF ACTION</u>

### <u>FIRST CLAIM FOR RELIEF</u>
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

66.   Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

67.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Panda Express's conduct related to deceptively representing that it provides a flat Delivery Fee of $2.95 on food deliveries ordered through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

68.   The UCL imposes strict liability. Plaintiff need not prove that Panda Express intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

69.   A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

70. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

71. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

72. Panda Express committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat $2.95 Delivery Fee for food orders, when, in reality, it hides delivery charges through the assessment of an elusive "service fee" exclusively charged to delivery customers.

73. Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

74. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

75. Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Panda Express deceptively represents that it provides a flat fee for delivery for food orders made on its website or mobile app; in reality, however, this marketing message is false because Panda Express's so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

76. Panda Express's business practices have misled Plaintiff and the proposed Class and will continue to mislead them in the future.

77. Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the Panda Express food delivery service in ordering food from Defendant's website or mobile app.

78. By falsely marketing the true costs of food delivery, Panda Express deceived Plaintiff and

Class members into making online food purchases they otherwise would not make.

79.     Had Plaintiff known the truth of the delivery service fee, *i.e.,* that Panda Express's "Service Fees" were in all reality "delivery fees," she would have chosen another method for receiving food from Panda Express or ordered food from another provider.

80.     As a direct and proximate result of Panda Express's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into ordering food for delivery under the false belief that delivery was $2.95.

81.     As a result of its unfair, fraudulent, and unlawful conduct, Panda Express has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750,** *et seq.*

82.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

83.     This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.* Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of California Civil Code § 1761(e). Defendant's online delivery service utilized by Plaintiff and the Class is a "service" within the meaning of California Civil Code § 1761(b). The food products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

84.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Panda Express food orders for delivery:

    a.     "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

    b.     "Advertising goods or services with intent not to sell them as advertised" (a)(9).

85.     Specifically, Panda Express advertises to customers that use of its delivery service is a flat fee of $2.95, but this is false because Defendant imposes hidden delivery charges to consumers by covertly applying a "Service Fee" exclusively to delivery orders and misrepresenting that it is actually a delivery charge.

86.     At no time does Panda Express disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

87.     Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend her Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

### THIRD CLAIM FOR RELIEF
**Violation of Michigan Consumer Protection Act ("MCPA")**
**M.C.L. §§ 445.903, *et seq.***

88.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

89.     This cause of action is brought pursuant to Michigan's Consumer Protection Act, M.C.L. §§ 445.903, *et seq.* Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of the MCPA.

90.      Defendant violated and continues to violate the MCPA by engaging in the following practices proscribed by the MCPA in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Panda Express food orders for delivery:

        a.     "Representing that goods or services . . . have . . . characteristics . . . that they do not have" (1)(c);

        b.     "Advertising or representing . . . services with intent not to dispose of those . . .

services as advertised or represented" (1)(g); and

    c.    "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer" (1)(s).

91.    Specifically, Panda Express advertises to customers that use of its delivery service is a flat fee of $2.95, but this is false because Defendant imposes hidden delivery charges to consumers by covertly applying a "Service Fee" exclusively to delivery orders and misrepresenting that it is actually a delivery charge.

92.    Plaintiff reasonably relied on Defendant's material misrepresentations about the falsely advertised cost of delivery in choosing to utilize the Panda Express food delivery service in ordering food from Defendant's website or mobile app. Had Plaintiff known the truth of the delivery service fee, *i.e.,* that Panda Express's "Service Fees" were in all reality "delivery fees," she would have chosen another method for receiving food from Panda Express or ordered food from another provider.

93.    At no time does Panda Express disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff on behalf of herself and the Class seeks judgment in an amount to be determined at trial, as follows:

(a)    For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)    For declaratory and injunctive relief as set forth above;

(c)    For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)    For compensatory damages according to proof;

(e)    For punitive damages according to proof;

(f)    For reasonable attorneys' fees and costs of suit;

(g)    For pre-judgment interest; and

(h)    Awarding such other and further relief as this Court deems just, proper and equitable.

1

## **JURY DEMAND**

2
      Plaintiff hereby demands a jury trial on all claims so triable.

3

4
Dated: July 1, 2021                       **KALIEL GOLD PLLC**

5
                                By:*/s/ Jeffrey D. Kaliel*

6
                                  Jeffrey D. Kaliel (SBN 238293)

7
                                  *jkaliel@kalielpllc.com*
                                  Sophia Goren Gold (SBN 307971)

8
                                  *sgold@kalielgold.com*
                                  **KALIEL GOLD PLLC**

9
                                  1100 15th Street NW, 4th Floor
                                  Washington, D.C.  20009

10
                                  Tel: (202) 350-4783

11
                                  *Attorneys for Plaintiff and the Proposed Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28